In re MICHAEL C.

No. 88–105–Appeal.

Supreme Court of Rhode Island.

May 12, 1989.

———

Francis B. Brown, Gail A. Dyer, Court Appointed Sp. Advocates, Janet Gilligan, Dept. of Children and their Families, for plaintiff.

Joseph A. Capineri, Capineri & Crowley, Pawtucket, Frederic A. Marzilli, East Providence, for defendant.

OPINION

KELLEHER, Justice.

The parents of Michael C. are before this court on their respective appeals from a judgment of the Family Court in which the trial justice found that the couple's thirteen-year-old son had been sexually abused by his father[1] and neglected by both parents.

At the Family Court hearing, counsel for the Department of Children and Their Families (DCF), acting pursuant to G.L.1956 (1985 Reenactment) § 9–17–14, called both parents as adverse witnesses. The mother testified that at the time of the events in question she had been married to Michael's father for seven years. The mother would leave for work early in the morning. The father, who had been injured in a workrelated incident and was receiving Workers' Compensation benefits, remained at home. Consequently, he had the responsibility of awakening Michael and ensuring his readiness for school.

The mother testified that on two occasions in the spring of 1987 Michael told her that her husband was "after his body." When she relayed this information to her husband, he denied any such intent. Michael was told by his mother to stay away from his father and not to bother him.

In his appearance as an adverse witness, the father denied ever having engaged in any sexual activity with Michael. When his wife first told him of Michael's accusations, the father asserted, he thought she was joking.

Prior to Michael's testifying, an attorney for DCF and Michael's guardian ad litem explained to the trial justice that Michael had "expressed a great deal of anxiety about testifying in open court." He was

———

1. Michael was adopted by John C. in May 1984.

described as being "most reticent and embarrassed to testify in open court."

It should be noted at this point that the trial justice decided that Michael's testimony was to be given in camera before him, with a stenographer recording the proceedings. After Michael had been questioned by the trial justice, his testimony was read back to the attorneys for the parents. The attorneys were then permitted to formulate written questions for cross-examination, which would also be posed by the trial justice in camera. The father's attorney submitted some fifty inquiries. The mother's attorney submitted an almost equal number.

Michael told the trial justice of various episodes involving the father's stripping him of his pants and pajamas and stroking his genitalia and, apparently on other occasions, committing what might be described as first-degree sexual assault. When Michael informed the mother of what was occurring, she did not believe him.

On cross-examination Michael denied that he complained about his father because he was afraid of being punished for a report card that did not measure up to parental expectations. He also denied that he was attempting to retaliate against the father after he had been punished for beating up a boy in school. The punishment included confinement to his room for a six-week period with the knob on the television set turned to the off position.

The parents, for their part, denied any wrongdoing by either party and described Michael's testimonial efforts as an attempt to gain revenge for his father's "failure to give him a motorcycle" or because of the parental discipline that had been imposed. The trial justice found Michael's testimony to be forthright, clear, and convincing. He rejected the parents' defense of fabrication, and he specifically ruled that the father's testimony was not worthy of belief.

The trial justice found that the father had sexually abused Michael and that the mother was "confused and bewildered * * * and perhaps torn between the love for the child and loyalty to her husband." Consequently the trial justice committed

Michael to the custody of DCF after finding that he was an abused and neglected child. He also restrained the father from having any contact with Michael.

In their appeals both the mother and the father claim that the trial justice erred in allowing the in-camera testimony of Michael. They also claim that their due-process rights were violated by the trial justice's technique and their right to confrontation unduly restricted.

The father also argues that the trial justice erred in not permitting him to call Michael as an adverse witness.

The mother claims that DCF violated Rule 13(b) of the Rules of Juvenile Proceedings because its petition did not explicitly state the facts on which DCF relied to show that Michael had been abused and neglected. She also faults the trial justice for considering the argument presented by the guardian ad litem who was not present on the first day of the hearing. The DCF sees little merit in these contentions, and neither does this court.

 The sole critical issue in this familial dispute concerns the trial justice's refusal to have Michael testify in open court. All the litigants recognize that this court, in *In re James A.*, 505 A.2d 1386 (R.I.1986), approved an approach taken by another Family Court justice who authorized a procedure somewhat similar to that used in the case at bar. Initially the trial justice submitted questions to the child with the attorneys for both parties present. After the child became upset, the trial justice cleared the chambers and continued questioning the child with only the stenographer present. Later the questions and answers were read back, and the attorneys were permitted to formulate follow-up questions. *Id.* at 1389. There the father argued before us that this procedure, because it did not permit confrontation, failed to accord him his constitutional right of confrontation. *Id.* at 1390.

After noting that there is no constitutional right to confrontation in noncriminal proceedings, this court stated that the issue was whether due process necessitated the

father's being permitted to cross-examine. There this court emphasized that such a determination "must be made in light of the particular facts and circumstances of the particular case." *Id.*

This court found no abuse of discretion in the trial justice's decision to protect the child from a potentially "severe psychological trauma" by reason of testifying in court. *Id.* at 1391.

Here virtually the same procedure was followed. The only significant difference is that Michael was thirteen years of age at the time of the hearing whereas the child in *In re James A.* was five years old. Naturally Michael's mother and father argue that there was no need to protect the sensitivities of a thirteen-year-old boy.

While the trial justice in *In re James A.* expressed concern for the tender years of the child, we are of the belief that a similar trauma may await an adolescent boy when testifying about sexual acts performed upon him by an adult male. However, it was argued that the emotional impact upon an adolescent boy of thirteen, after testifying about sexual acts performed upon him by an adult male, may be substantially less severe than the impact experienced by a younger child testifying about sexual abuse. This concept is highly debatable.

We believe that this issue is best resolved at the trial level where the trial justice is in a position to see and hear the witnesses. Thus such a decision is one that lies within the discretion of the trial justice after consideration of the best interests of the child as weighed against the interests of the parents and the state. The adoption of a special procedure in order to protect a child, if the trial justice deems it appropriate, is a discretionary matter. The record before us discloses no abuse of that discretion.

Proof of the correctness of the trial justice's decision can be found during the cross-examination of the father, when he was asked if he had threatened to punch Michael after Michael had told his mother what was going on at home. After replying in the negative, the father continued, "I threatened to strangle the little bugger if he took a swing at his mother or any other member of the family again. * * * I told him if he ever did it again, I would kill him and put him through the wall because I was furious." We believe that these shocking remarks provide a sufficient evidentiary basis for the trial justice's conclusion that Michael's testimony would be given in camera.

While this controversy was on appeal, counsel were asked to comment on whether the holding in *Coy v. Iowa,* —— U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), is applicable to this litigation. Counsel for the parents argued that it is. However, *Coy* has no relevancy to the issues that were pending before the trial justice. *Coy* was a criminal appeal involving the defendant's constitutional right to confront his accusers, two thirteen-year-old girls. Here we are concerned with a civil proceeding in which the petition speaks in terms of the parents' neglect and abuse and seeks a change in the care, custody, and control of Michael from his parents to DCF. In such proceedings the parents have no right to face-to-face confrontation with Michael.

Accordingly the mother's and the father's appeals are denied and dismissed. The judgment appealed from is affirmed.