**In re DIANA P.**

**No. 93–337–A.**

Supreme Court of Rhode Island.

April 6, 1995.

Ellen R. Balasco, CASA, Anthony J. Angeli, Jr., Dept. of Children, Youth and Families, Gail Corrente, for plaintiff.

Steven E. Asprinio, Steven Aaron Robinson, Warwick, for defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the appeals of Kathleen P.[1] and Agapito P. from a Family Court finding of neglect regarding their daughter, Diana. We sustain in part the appeals of Kathleen P. and Agapito P. and remand the case to the Family Court for a partial rehearing. The facts of the case insofar as pertinent to these appeals are as follows.

The respondents Kathleen P. (Mrs. P.), and Agapito P. (Mr. P.) are the parents of Diana. Mrs. P. is the older sister of Gina.[2] Gina, who was seven years old at the time, made complaints of sexual abuse against Mr. P., her sister's husband, in relation to an incident which occurred while Mr. and Mrs. P. were babysitting for Gina. Because of these complaints, the Department of Children, Youth and Families (DCYF) conducted an investigation of Mr. and Mrs. P. to determine whether the couple's own child, Diana, was at risk.

At the conclusion of the investigation, DCYF told Mrs. P. to monitor very carefully any interaction between Mr. P. and Diana and not to leave Mr. P. alone with their daughter, Diana. The DCYF became concerned upon learning that Mr. P. had been home alone with Diana while Mrs. P. was at work and, after further investigation, filed a petition for custody of the child. A hearing was held in Family Court wherein the trial justice determined that both Mr. and Mrs. P. had neglected Diana. The finding of neglect with respect to Mrs. P. was based on the finding that she had been leaving Diana home alone with Mr. P. The trial justice ordered that Diana be placed in the custody of DCYF. Both respondents have appealed this order.

The key issue at trial was whether Mr. P. had molested Gina. If Mr. P. had not molested Gina then neither Mr. P. nor Mrs. P. could be found guilty of neglecting Diana. At trial, the bulk of the evidence concerning the alleged molestation came from Gina, either through her direct testimony or through assertions she had made to other people. Most of the testimony offered by other witnesses at trial was based in great part, if not in whole, on what Gina had told them.

Throughout the proceedings Mr. P. maintained his innocence, denying Gina's allegations of abuse. Mrs. P., who had initially taken Gina to the Warwick police to file a report of abuse, testified at trial that she no longer believed Gina's allegations. Gina had apparently recanted her statements, telling Mrs. P. that she had lied about a few things and was sorry for what she had said. According to Mrs. P., Gina said that she wanted to see Mr. P. again. Because most of the evidence at trial was based on statements made by Gina and the statements were in-

---

1. It is unclear from the record whether Mrs. P. filed a notice of appeal. She has filed a brief, however, and her case is directly related to Mr. P.'s appeal. For purposes of this opinion we shall treat Mrs. P.'s appeal as if it were properly filed. If, at a new hearing, Mr. P. is found not to have neglected Diana and is not considered to be a threat to his daughter then Mrs. P. cannot be found guilty of neglect for leaving Diana alone with him.

2. Gina was adopted by Mrs. P.'s parents in 1990. Mrs. P.'s mother had apparently been close to Gina's biological mother and had helped care for Gina from the time she was an infant.

consistent, Gina's testimony became the most critical evidence in the case.

■ The trial justice decided to interview Gina in camera without the respondents or their respective counsel present. Such a procedure may be permissible under extreme circumstances when a child of tender years is involved. *Cf. Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (criminal case where the use of a one-way closed circuit television was held proper since the state's interest in protecting the physical and psychological well-being of a child abuse victim outweighed the defendant's Sixth Amendment right to confront his accuser).[3] The trial justice, at his or her discretion, may interview the child alone with a stenographer if there is a finding that the child would become emotional or upset by the presence of other parties. *See In re Michael C.,* 557 A.2d 1219, 1220–21 (R.I.1989); *In re James A.,* 505 A.2d 1386, 1390–91 (R.I.1986). In the instant case, however, the trial justice excluded both respondents and their respective counsel without any determination that their presence would have upset or been harmful to Gina.

■ In child neglect and abuse cases, the court must take a three-dimensional approach when determining the custody of the child, giving due consideration to the children, the parents, and the state. *In re Lester,* 417 A.2d 877, 879–80 (R.I.1980). When using this approach the best interests and welfare of the child outweigh all other considerations. *Id.* at 880; *In re Denise,* 122 R.I. 426, 428, 408 A.2d 606, 607 (1979). As in any case, however, a respondent's due process rights must not be ignored.

■ In the instant case, the trial justice offered no reason why respondents would be excluded from the in camera proceeding. If the trial justice had found that the presence of Mr. and Mrs. P. at the in camera proceeding would have caused Gina to become emotional or upset she certainly could have excluded them. *See In re Michael C.,* 557 A.2d at 1220; *In re James A.,* 505 A.2d at 1390–91. Without such a finding, however, respon-

dents were entitled to hear Gina's testimony directly and should have been present for the proceeding. Furthermore, counsel for Mr. and Mrs. P. were excluded from the in camera proceeding. Counsel for the parties should only be excluded in the most extreme circumstances. In the present case, the trial justice made no finding that the presence of the attorneys would have upset Gina or interfered with her testimony. The attorneys, therefore, should have been present during Gina's testimony.

The effect of respondents' exclusion from the interview might have been mitigated had the trial justice allowed counsel for the parties to submit questions that the trial justice could then have asked Gina during the interview. The trial justice, however, refused to use the questions submitted by Mr. P. because they were leading. Since Gina was an adverse witness to Mr. and Mrs. P. it was not proper for the trial justice to prohibit the questions merely because they were leading.

Mr. P. did not call Gina as a witness. The DCYF, acting on behalf of the state, called Gina as a witness to testify concerning alleged acts of sexual abuse by Mr. P. Gina, therefore, was an adverse witness to both Mr. and Mrs. P. and any questions propounded by respondents to Gina would be in the nature of cross-examination. In these circumstances leading questions are not only allowed, they are generally expected and certainly appropriate. R.I.R.Evid. 611(c). Of course, if the questions submitted by counsel were argumentative or formulated in such a manner as purposely to upset the child, the trial justice could properly exclude them. There is no evidence, however, that Mr. P.'s questions were argumentative or otherwise inappropriate. As long as the questions were reasonable, the trial justice should have propounded them to Gina.

It is important in cases that involve child abuse and neglect, that the trial justice utilize procedures which protect the interests of the child involved. But while the best interest of the child is the paramount factor in such situations, the rights of the parents

---

**3.** Since this is not a criminal case the Sixth Amendment right to confrontation is not impli-

cated but respondent's right to due process must be observed.

involved in custody proceedings remain a most essential consideration. *In re Lester,* 417 A.2d at 880 (citing *In re Denise,* 122 R.I. at 428, 408 A.2d at 607); *see also Engelhardt v. Bergeron,* 113 R.I. 50, 57, 317 A.2d 877, 882 (1974). In the instant case, there is no indication from the record that the trial justice considered the due process rights of Mr. and Mrs. P. at any point during the examination of Gina.

Although there is no right to face-to-face confrontation in civil proceedings, respondents had no opportunity to test the testimonial infirmities of their accuser. *See In re Ashley D.,* 621 A.2d 1258, 1259 (R.I.1993) (citing *In re Michael C.,* 557 A.2d at 1221). This was especially prejudicial in the instant case since their accuser, also the principal witness in the case, had made several inconsistent statements regarding the alleged abuse. Despite the significance of Gina's testimony, both respondents and their attorneys were excluded from her in camera testimony. That decision was made by the trial justice without any finding that their presence would have upset the child, and the trial justice refused to ask Gina the questions which Mr. P. had submitted for the interview solely because they were leading. Such a proceeding, which excluded all participation by the accused party and failed to provide respondent Mr. P. with even minimal procedural safeguards clearly violated respondent's due process rights. The instant case was fraught with potential for prejudice to respondent. Thus Mr. P. is entitled to a re-examination of Gina under appropriate safeguards.

We need only briefly address one issue raised on appeal by Mrs. P. At the end of DCYF's case, before Mr. P. had presented a defense, Mrs. P. moved for a directed verdict in the case against her. The judge declined to decide the case against Mrs. P. separately and denied the motion. She argues that the trial justice erred by denying her motion. We disagree.

Assuming without deciding that a motion for directed verdict is appropriate in a nonjury case (as opposed to a motion to dismiss), we do not believe Mrs. P. was entitled to a directed verdict or its equivalent in her favor. This would raise the issue of whether Mrs. P. was entitled to a judgment as a matter of law. Viewing the evidence in the light most favorable to DCYF and drawing all reasonable favorable inferences therefrom, the respondent mother was not entitled to judgment as a matter of law. *See Haxton's of Riverside v. Windmill Realty, Inc.,* 488 A.2d 723, 725 (R.I.1985). The DCYF presented sufficient evidence at trial upon which reasonable minds could differ. *See id.; Evans v. Liguori,* 118 R.I. 389, 394, 374 A.2d 774, 776 (1977).

For the reasons stated, Mrs. P.'s appeal is denied in part and sustained in part, Mr. P.'s appeal is sustained in part, and the case is remanded to the Family Court trial justice for a new hearing with respect to Gina in accordance with the guidelines we have established. After a supplemental hearing the trial justice may render a decision based upon this examination as well as evidence previously adduced. Any aggrieved party may seek review by this court. The papers in the case may be remanded to the Family Court for further proceedings.