**In re A.L., J.L., and J.L., Juveniles**

[669 A.2d 1168]

No. 93-509

April 14, 1995. Father of three juveniles appeals from an order of the Orleans Family Court declaring them to be in need of care and supervision (CHINS). We affirm.

The State initiated CHINS proceedings on the basis that the three juveniles had been abused by their then custodian father. A.L. and J.L. are the offspring of the father and C.W. The third and youngest child, J.L., is the offspirng of the father and C.L. In 1992, a relief from abuse proceeding was instituted against the father by his then wife, C.W., on her own behalf and on behalf of the children. The specific allegations regarding child abuse were that the father had hit both children with a stick and had "zapped" them with a cattle prod. The parties and their attorneys, the children's attorney, and a guardian ad litem were present at a reconvened hearing on the abuse petition in July 1992. At this hearing both A.L. and the older J.L. testified in chambers without their parents present, with the prior consent of the father and C.W.

In August 1992, the State filed a CHINS petition as to all three children, alleging that the father had abused A.L.

and J.L., based on allegations of abuse identical to those alleged by C.W. in her relief-from-abuse affidavit. One of the main issues at the CHINS merits hearing was whether the testimony from the abuse proceeding would be used, precluding further testimony by A.L. and J.L. The only party to the CHINS proceeding not present when the children testified in chambers at the July 1992 abuse proceeding was the State, which waived any objection it might have had to the court's consideration of this testimony. Father wanted the children to testify in person at the CHINS proceeding, especially in light of his contention that they had recanted their earlier testimony. After taking evidence, the court found no credible evidence of recantation by either child and ruled that it would not be in the children's best interests to testify again.[1] The court concluded that all three children were CHINS, awarded sole custody to their respective mothers, and restricted father's contacts in accordance with a detailed visitation order. The present appeal followed.

Father argues, first, that the court violated his right of confrontation under the Sixth Amendment to the United States Constitution and Chapter I, Article 10 of the Vermont Constitution[2] by declining to require A.L. and J.L. to testify at the

CHINS merits proceeding. As to his claim under the Sixth Amendment, father relies on *Coy v. Iowa*, 487 U.S. 1012 (1988). In that case, the Supreme Court held that the Sixth Amendment requires that a defendant be permitted a face-to-face confrontation with his accuser. *Id.* at 1022. The Court, however, specifically noted that this right was one accorded under the Sixth Amendment to *criminal* defendants. *Id.* at 1015. Father cites no case holding that the Sixth Amendment right of confrontations applies to CHINS cases. While we have not addressed the issue directly in Vermont, the majority of cases in other jurisdictions do not require face-to-face confrontation in CHINS proceedings.

In New Jersey, the court relied on the general principle that the constitutional right of confrontations afforded by the Sixth Amendment of the United States Constitution guarantees the accused the opportunity of cross-examination only in criminal proceedings. *Division of Youth & Family Services v. V.K.*, 565 A.2d 706, 710-11 (N.J. Super. Ct. App. Div. 1989). The court held that while the confrontation right is "respected in the civil sphere," the court, in juvenile proceedings, should balance the need to protect the children against a parent's need to see and participate when the children answer the judge's questions or answer questions submitted by the attorneys. *Id.* at 711. Similarly, the Rhode Island Supreme Court in *In re Michael C.*, 557 A.2d 1219, 1220-21 (R.I. 1989), held that the trial court did not err in clearing chambers of the attorneys when the child became upset and the judge asked questions with only the stenographer present. The ques-

---

[1] The trial court took judicial notice of the testimony in the abuse hearing pursuant to V.R.E. 201. The rule authorizes judicial notice of "adjudicative facts," V.R.E. 201(a); testimony in another proceeding is not an adjudicative fact. Testimony from another proceeding must be admitted as evidence pursuant to V.R.E. 804(b)(1), which requires that the witness be unavailable. Father never objected that the requirements of V.R.E. 804(b) were not met and has not made that argument here. As a result, we have not addressed it.

[2] Chapter I, Article 10 states in relevant part:

   That in all prosecutions for criminal offenses, a person hath a right to be heard by oneself and by counsel; to demand the cause and nature of the accusation; to be confronted with the witnesses . . . .

tions and answers were read back and the attorneys formulated follow-up questions. The court stated that "the parents have no right to face-to-face confrontations" with the child. *Id.* at 1221; accord *In re Mary S.*, 230 Cal. Rptr. 726, 729 (Ct. App. 1986). We agree that parents do not have a right to face-to-face confrontation in CHINS proceedings. Therefore, father's right to confrontation under the Sixth Amendment was not violated.

Nor does father offer support for a different outcome under Chapter I, Article 10 of the Vermont Constitution. The only case he cites, *In re Lee*, 126 Vt. 156, 224 A.2d 917 (1966), calls for the observance of "[c]onstitutional safeguards" in juvenile matters and states that "[t]he parties have the right to be faced by and hear the witnesses who give evidence in court against him and have the opportunity to cross-examine them." *Id.* at 158-59, 224 A.2d at 919. But the decision does not state whether it is based on the United States or the Vermont Constitutions and is not a precedent for requiring stricter confrontation standards under the latter than under the former. We do not read *In re Lee* to hold that parents have a right to face-to-face confrontation in CHINS proceedings. That decision addressed an extraordinary and fundamental breach of good practice and fair play, since the judge had asked questions of persons in the courtroom who were not under oath and had considered information received by him from noncourt sources prior to the hearing. *Id.* at 158, 224 A.2d at 918-19. There was no such breach in the present case. In sum, father has not established a confrontation violation under either the United States or the Vermont Constitutions.

Father next argues that the court improperly relied on the doctrine of collateral estoppel. We disagree. The court did not purport to apply the doctrine and did not in fact do so. Collateral estoppel, or the preclusion of an *issue* previously liti-

gated, applies only when the following criteria are met: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the *issue* was resolved by a final judgment on the merits; (3) the *issue* is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the *issue* in the earlier action; and (5) applying preclusion in the later action is fair. *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). The CHINS court did not preclude any issue from consideration when it ruled that the children's prior testimony could be introduced in lieu of new in-person testimony. The CHINS issues were not the same as the issues in the abuse proceeding, even though some of the facts to be proved were similar. Consideration of the children's previous testimony did not invoke or violate collateral estoppel principles.

Father next argues that the court erred in allowing testimony containing hearsay statements of the children. First, father challenges the testimony of Goldie Watson, one of the SRS investigators who initially handled the investigation. Attempting to explain why SRS was involved in this case, Watson testified that A.L. had told her that bruises on her body had been caused by her father. In describing the physical characteristics of the bruises, she referred to another statement made by the child as to the cause of a bruise. In both instances, father objected on hearsay grounds. In response to the court's question about an offer of proof, the State responded that the hearsay evidence was not offered for the truth, or to bolster the children's testimony with other statements. The court essentially agreed with the State's explanation and ruled in the same manner as to similar testimony by C.W.

We agree that in the present context the statements were not hearsay. Hearsay is an out-of-court statement offered to

prove the truth of the matter asserted. V.R.E. 801(c). Statements not offered for their truth, but rather, to explain the conduct of the person to whom the statement was made are not hearsay. See *State v. Beattie*, 157 Vt. 162, 166-67, 596 A.2d 919, 922 (1991) (passing motorist's statement about defendant's apparent condition behind the wheel was offered to show that officer thought he had reason to approach defendant's van); *People v. Bollman*, 516 N.E.2d 870, 877 (Ill. App. Ct. 1987) (court allowed mother to testify about communications with her daughter to show that mother knew of conduct allegedly performed by defendant). In this case, Watson's testimony tended to explain why she took certain steps during her investigation. Similarly, C.W.'s testimony explained why she took the children down to the SRS office.

Father next contends that the court was inconsistent in disallowing hearsay evidence to come in through witness George Carson, a special investigator for SRS, who would have testified as to the origins of certain bruise marks on the buttocks of A.L. by stating what A.L. told him during his investigation. Father, however, did not argue that the out-of-court statement by A.L. was not hearsay, nor did he tender any rationale for a hearsay exception. Similarly, father proffered no hearsay exception for witness Cindy Rhoades's testimony about an out-of-court statement of A.L. that A.L. had been bruised by falling off her bike. When the court sustained the objection, there was no offer of proof that a hearsay exception applied or that father was not offering the out-of-court statement for its truth. Absent an offer of proof, we need not consider the issue. V.R.E. 103(a)(2).

Father next argues that A.L. and J.L.'s testimony during the July 1992 abuse proceeding was hearsay and that the court erred in relying upon this testimony in determining that A.L. and J.L. were CHINS. The record, however, establishes clearly that while father argued in favor of having A.L. and J.L. testify in the CHINS proceeding, he failed to object to the court's September 28, 1992 protective order taking judicial notice of the prior testimony and failed to note any objection to the court's lengthy statement of explanation denying father's request that the children be called in the CHINS proceeding. Absent an objection at trial, the question may not be raised for the first time on appeal. See *Lanphere v. Beede*, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal.").

On the day of the merits hearing, father objected to the presence of C.W.'s parents, A.L.'s and J.L.'s grandparents, who had been present at prior hearings. No other party objected to the grandparents' presence. The court allowed the grandparents to remain in the courtroom, citing 33 V.S.A. § 5523, which states that "only the parties, their counsel, witnesses and other persons accompanying a party for his assistance and such other persons as the court finds to have a proper interest in the case. . . may be admitted by the court." 33 V.S.A. § 5523(c). Father has not indicated why it was an abuse of the court's discretion to read this provision to include grandparents, who appear to fall squarely within the statute. Moreover, father fails to offer any theory of prejudice resulting from the presence of the grandparents, who did not offer testimony about abuse of the children. There was no error.

Finally, father argues that the court improperly curtailed the testimony of George Carson, intended to impeach the testimony of Goldie Watson. Watson, who is a nurse and was qualified as an expert, described the bruises on A.L. and J.L. and offered her opinion that the linear bruises on A.L.'s buttocks were consistent with having been struck with a stick. On cross-examination of Watson, father's

attorney attempted to impeach her testimony with a report generated by Carson. The court disallowed the report for lack of an adequate foundation. Later, however, Carson was permitted to testify, over the State's objection. In his testimony, Carson stated that based in part on the poor quality of Polaroid pictures, the origin of the children's bruises could not be determined. Father offers no theory on appeal challenging the court's denial of the introduction of the Carson report. Furthermore, because Carson testified personally about his opinion that the origin of the bruises was unclear, father is unable to show any prejudice. The record amply supports the court's ruling declining to admit the written report.

*Affirmed.*