This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-38128

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**

      Petitioner-Appellee,

v.

**JEREMY K.,**

      Respondent-Appellant,

and

**SKYE N.,**

      Respondent,

**IN THE MATTER OF JOSHUA N.,**

      Child.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Marie C. Ward, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Allison Pieroni
Albuquerque, NM

Guardian Ad Litem

## DECISION

**VARGAS, Judge.**

**{1}**     Jeremy K. (Father) appeals the district court's termination of his parental rights to Joshua N. (Child). Because we hold that (1) the district court's finding that the conditions and causes of neglect were unlikely to change in the foreseeable future is supported by substantial evidence and that (2) Father was able to meaningfully participate in the trial and there was a low risk of erroneous deprivation, we affirm.

**{2}**     We set out only the pertinent facts and law in connection with the issues analyzed because the parties are familiar with the facts and procedural posture of this case and because this a non-precedential, expedited bench decision. *See In re Court of Appeals Caseload,* Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016).

## BACKGROUND

**{3}**     The Children, Youth & Families Department (the Department) filed an abuse and neglect petition against Father on March 4, 2014 after it received a report from police that Child was left in a motel room in the care of a babysitter, without adequate food, and with access to drugs and drug paraphernalia. The affidavit filed that same day in support of the Department's request for an ex parte custody order reported that the babysitter told police that Child's mother was "out walking the street" and when Child's mother returned a few minutes later, she appeared intoxicated. Father was incarcerated at the time the Department received the report and was in and out of jail during the course of these proceedings.[1]

**{4}**     In May 2014 Father pleaded no contest to charges that he neglected Child at which time the district court found that, "[s]pecifically, [Father] has failed to provide care and support for [C]hild . . . and knew or should have known that [C]hild was neglected." The district court adopted the treatment plan proposed by the Department requiring Father to, among other things, maintain contact with the Department, participate in a psychosocial and domestic violence  assessments, a psychological evaluation, random drug screenings by the Department, substance abuse treatment, parenting classes,

---

[1] When the abuse and neglect petition was filed in March 2014, Father was incarcerated. Father was released soon after in May or April of that year but was subsequently arrested in June 2014 and incarcerated until, at least, March 2015. Father was arrested again in July 2015 and was incarcerated until October 2017 shortly after the first termination of parental rights trial in April 2017. Father was arrested again in January 2018 and remained incarcerated through the second termination of parental rights trial.

individual therapy, generally function consistently in the role of parent to Child by providing housing for Child, and maintain an income sufficient to provide for Child.

{5} Two years after filing its petition, the Department filed its first motion to terminate Father's parental rights in August 2016, alleging that the causes and conditions that brought Child into the Department's custody were unlikely to change in the foreseeable future despite the Department's reasonable efforts to assist Father in adjusting the conditions which rendered him unable to properly care for Child.

{6} Following the first termination of parental rights trial, the district court concluded that Father "ha[d] not alleviated the causes and conditions that brought [C]hild into the custody of the Department," but that Father had attempted to comply with areas of his treatment plan to which he had access while incarcerated and that Father may soon be released. The district court ruled that the Department had not proven by clear and convincing evidence that the causes and conditions of Child's neglect would not be alleviated in the foreseeable future and denied the Department's motion, but explicitly noted that Child should not be kept in a holding pattern indefinitely. The district court noted that Father would have to continue working and demonstrate that reunification is feasible.

{7} Six months after the first termination of parental rights trial, in October 2017, Father was released from incarceration. The Department reported that Father made initial attempts to comply with the treatment plan but suddenly stopped visiting Child, could not be contacted by the Department, and by December 2017 had been re-incarcerated. The Department filed its second motion for the termination of Father's parental rights in March 2018, again, alleging that the causes and conditions that brought Child into the Department's custody were unlikely to change in the foreseeable future despite the Department's reasonable efforts to assist Father in adjusting the conditions that rendered him unable to properly care for Child. The trial on the motion was held on June 18, 2018, at which time the district court granted the Department motion terminating Father's parental rights. This appeal follows.

**DISCUSSION**

{8} On appeal, Father raises two issues: (1) whether the district court erred when it concluded that the Department proved by clear and convincing evidence that the conditions and causes of the Child's neglect were unlikely to change within the foreseeable future; and (2) whether the district court erred when it concluded that Father's due process rights were not violated by the district court's denial of Father's motion for a continuance. We address each of those arguments in turn.

**I.** **The District Court Properly Concluded That the Department Proved by Clear and Convincing Evidence That the Conditions and Causes of Child's Neglect Were Unlikely to Change in the Foreseeable Future.**

**{9}** To terminate a parent's rights to a neglected or abused child, the district court must find by clear and convincing evidence that "the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future[.]" NMSA 1978, § 32A-4-28(B)(2) (2005); *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833 (stating that the standard of proof for termination of parental rights is clear and convincing evidence). "Clear and convincing evidence is defined as evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth, & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 NM 286, 209 P.3d 778 (alteration, internal quotation marks, and citations omitted).

**{10}** On appeal, "[this Court] will uphold the district court's judgment 'if, viewing the evidence in the light most favorable to the judgment, a fact[-]finder could properly determine that the clear and convincing standard [had been] met.'" *State ex rel. Children, Youth, & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 NM 222, 185 P.3d 1072 (internal quotation marks and citations omitted). To determine whether the clear and convincing standard has been met, the Court must determine "whether substantial evidence supports the [district] court's decision." *State ex rel. Children, Youth, & Families Dep't. v. Patricia H.*, 2002-NMCA-061, ¶ 21, 132 N.M. 299, 47 P.3d 859. "We will not reweigh the evidence nor substitute our judgment for that of the factfinder. We consider the evidence in the light most favorable to the prevailing party and disregard any inferences and evidence to the contrary." *State ex rel. Children, Youth, & Families Dep't. v. Mercer-Smith*, 2015-NMCA-093, ¶ 29, 356 P.3d 26, *rev'd on other grounds by* 2019-NMSC-005, 434 P.3d 930. Therefore, the question for this Court is whether the district court's finding that the conditions and causes of Child's neglect were unlikely to change in the foreseeable future is supported by substantial evidence.

**{11}** Father argues that the district court's finding was not based on evidence that the causes of the abuse and neglect were unlikely to change in the foreseeable future, but rather on the fact that Father was incarcerated at the time of the termination trial. Father contends that the district court should have considered the fact that he testified that he would soon be released from prison, that he had taken advantage of treatment available to him while incarcerated, and would "resume engagement of services and visitation with [C]hild" upon his release.

**{12}** While we agree that a district court may not terminate parental rights solely on the basis of a parent's incarceration, *see State ex rel. Children, Youth, & Families Dep't. v. Christopher B.*, 2014-NMCA-016, ¶ 12, 316 P.3d 918, that is not the case here. It is apparent from the district court's findings that it considered both the treatment and services that Father engaged in while incarcerated, as well as those he participated in while he was not incarcerated, after the first termination trial.

**{13}** At the second termination trial, Father testified that he had been homeless from December 2017 to January 2018 when he was re-incarcerated. Ms. Brittani Luna, Child's permanency planning worker testified that while Father was initially cooperative,

he stopped participating, ceased communicating and visiting with Child, and stopped complying with the treatment plan. Ms. Luna testified that while Father attended seven regular visitations with Child, he suddenly stopped attending in December 2017, which caused Child to become very concerned, worried, and angry—risking the progress Child had made in treatment foster care. Ms. Luna also testified that Father did not enroll in any of the referrals from the Department to receive substance abuse and domestic violence treatment, psychological evaluations, or parenting classes.

**{14}**   Leah Brouwers, Child's therapist, testified that Child had not seen Father in the last five years, since Child was five-years-old, and Father's initial absence in Child's life contributed to Child's diagnosis of depression, post-traumatic stress disorder, oppositional defiant disorder, and attention deficient, hyperactivity disorder. Ms. Brouwers also testified that Child had attachment issues, which made Child unable to regulate emotions, resulting in extreme emotions. Despite those issues, Ms. Brouwers stated that Child had been making progress. However, Ms. Brouwers testified that Father sporadically attended Child's treatment team meetings and when Father suddenly stopped visiting in December 2018, Child was devastated and angry, and Child said that he did not want a father who was in and out of jail, that his father could not keep him safe, and that Father had broken his heart.

**{15}**   The district court found that Father did not successfully complete any of the treatment plan, made no progress on correcting the causes and conditions of neglect, and could not appropriately parent Child in the foreseeable future. In reaching its conclusion, the district court considered the testimony of Ms. Luna and Ms. Brouwers, specifically the testimony that Father failed to participate, that his failure had re-traumatized Child, that it would not be until December 2018, at the earliest, when Father could even attempt to make any changes to the causes and conditions of the neglect, that any changes would require significant time and effort, particularly since little had changed since the first termination hearing, and that the district court was unsure whether Child would even reconsider participating. Additionally, the district court found that Child was making progress in treatment, that Child was adoptable, and that Child expressed desire to be adopted. Given these considerations, including the testimony, and disregarding all evidence and inferences to the contrary, we hold that there is substantial evidence to support the district court's conclusion that the conditions and causes of neglect are unlikely to change in the foreseeable future.

## II.   Due Process

**{16}**   We now turn to Father's argument that he was deprived of due process when the district court denied his motion for a continuance. At the second termination trial, Father asserted that while he was being transported to the trial from the detention facility in Clayton, New Mexico, transportation personnel confiscated various documents showing his enrollment in classes while incarcerated and letters from his case worker and counselor. Father moved for a continuance so that he could obtain those documents, and the district court denied that motion. Father contends that the denial of the motion

violated his due process rights, as he could not put on a defense at the trial without the confiscated documents.

**{17}** "Parental Rights cannot be terminated without due process of law." *State ex rel. Children, Youth & Families Dep't v. Rosalia M.*, 2017-NMCA-085, ¶ 8, 406. P.3d 972. "Whether an individual was afforded due process is a question of law that we review de novo." *Id.* (alteration, internal quotation marks, and citation omitted). "To evaluate the due process owed to a parent in termination proceedings, we use the balancing test in *Mathews v. Eldridge,* 424 U.S. 319 . . . (1976)." *Rosalia M.*, 2017-NMCA-085, ¶ 9; *State ex rel. Children, Youth & Families Dep't v. Mafin M.,* 2003-NMSC-015, ¶ 19, 70 P3.d 1266. The *Mathews* test requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335. Regarding the first and third prong, the "[p]arents' interests in maintaining a parental relationship with their children is a fundamental right [meriting] strong protection. The government's interest in protecting the welfare of children is equally significant." *In re Pamela A.G.,* 2006-NMSC-019, ¶ 13, 139 N.M. 459, 134 P.3d 746 (alteration, internal quotation marks, and citation omitted). Therefore, our inquiry focuses on the second factor: "whether the procedures used increased the risk of an erroneous deprivation of [Father's] interest and whether additional safeguards would eliminate or lower that risk." *State ex rel. Children, Youth & Families Dep't v. Maria C.,* 2004-NMCA-083*,* ¶ 37*,* 136 N.M. 53, 94 P.3d 796 (internal quotation marks and citation omitted). The procedural question here is whether the district court's denial of Father's motion for continuance increased the risk of an erroneous deprivation of Father's interest. We hold that it did not.

**{18}** "In termination proceedings, the parent has the right under due process to a fair opportunity to be heard and to present a defense. . . . [and] the opportunity for meaningful participation." *Mafin M.*, 2003-NMSC-15, ¶ 21 (internal quotation marks and citations omitted). Meaningful participation under due process includes "a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statue; and a hearing before an impartial decisionmaker." *State ex rel. Children, Youth & Families Dep't v. Kathleen D.C.*, 2007-NMSC-018, ¶ 12, 141 N.M. 535, 157 P.3d 714 (internal quotation marks and citation omitted).

**{19}** In this case, Father has not established how he was not able to meaningfully participate in the termination proceedings without the confiscated documents. Father was given the opportunity to confront and cross-examine every witness put forward by

the Department, was provided with representation, and was given a trial before an impartial decision maker. Additionally, despite not being able to put forward the specific documents confiscated by transportation personal, Father was able to present evidence of the programs and classes in which he participated while incarcerated through his testimony, which the district court explicitly considered in its ruling. Therefore, we hold that Father was able to meaningfully participate in the termination proceeding and adequately convey the information that was in the confiscated documents. Accordingly, we conclude that there was little risk of erroneous deprivation of Father's parental rights and, consequently, Father was not deprived of due process.

**CONCLUSION**

**{20}** Because we find that the district court's ruling, that the conditions and causes of Child's neglect were not likely to change within the foreseeable future, was supported by substantial evidence of a clear and convincing nature, and that Father was not deprived of due process, we affirm.

**{21}  IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JACQUELINE R. MEDINA, Judge**