2007-NMSC-018

157 P.3d 714

**In the Matter of DAMION M.C., a child,**

**State of New Mexico ex rel. Children Youth and Families Department, Petitioner–Respondent,**

v.

**Kathleen D.C., Respondent–Petitioner.**

No. 29,134.

Supreme Court of New Mexico.

March 6, 2007.

Rehearing Denied May 1, 2007.

Jane Bloom Yohalem, Santa Fe, NM, for Petitioner.

New Mexico Children Youth & Families, Rebecca J. Liggett, Santa Fe, NM, for Respondent.

## OPINION

MAES, Justice.

{1} The issue in this case is whether an indigent mother was denied due process of law in an abuse and neglect adjudicatory proceeding by the trial court's failure to appoint a qualified forensic medical expert to assist Mother. The Court of Appeals concluded that the district court did not abuse its discretion nor deny Mother due process of law, and it affirmed the judgment of the district court. We conditionally affirm.

### I. Background

{2} This case arises out of a tragic incident in which four-month-old Damion C. ("Child") suffered severe and irreversible brain damage. Child lived with his mother, Kathleen C. ("Mother") and her roommate, Rudy Lobato ("Lobato") in a mobile home. Sometime around 5:30 to 5:45 p.m. on January 2, 2003, Mother laid Child on an air mattress in the

bedroom of the home. Lobato then drove Mother to work while a friend of Lobato watched Child. After dropping Mother off at work, Lobato stopped to pick up a pizza and arrived home around 6:20 p.m. Lobato immediately checked on Child, who was on his stomach with his head turned to the side. Lobato picked up Child and laid him back down on his side, propped with pillows. Lobato went to the living room, where he ate pizza for about five minutes before checking on Child again. Child was still on his side, propped with pillows, looking at the ceiling fan. Lobato spoke to Child, who was pink and responsive. Lobato then returned to the living room and was headed to the kitchen when Mother arrived home. She had phoned earlier to report that she had been fired from her job. When she arrived home, she spoke with Lobato for about 30 seconds then went down the hall to the bedroom. The door to the bedroom was open and the light was on. Mother testified that she saw Child on the bed with his face straight down. She ran over and picked up Child and noticed that he was not breathing. His face was blue, and he was lifeless. Mother started screaming, picked up Child, and ran into the living room. She was still screaming and yelling for help as she placed Child on the couch. Lobato resuscitated Child by blowing one breath into Child's mouth, and told his friend to call for an ambulance. Child started breathing on his own, stretched his arms upward, then began grunting and moving. Lobato told Mother to leave because she was still screaming, so she went outside and phoned a friend. An ambulance was headed to the home, but turned the wrong direction, so Mother chased after it. Child was having a seizure as the paramedics began attending to him. He was taken to a local hospital, then flown to an Albuquerque hospital the next day. Child suffered severe brain damage.

{3} A Neglect/Abuse Petition was filed by Children, Youth and Families Department ("CYFD") on January 7, 2003, alleging abuse and neglect by Mother and Lobato.[1] Counsel was appointed on January 13, 2003, to represent Mother. On February 28, 2003,

Mother requested a new attorney, claiming that she had done research on her case and that her present attorney was not adequately communicating with her to gather sufficient information. Mother filed a Notice of Rescind of Signature [sic] on her own on March 7, 2003, attempting to withdraw her consent to release information regarding court-ordered evaluations. A second attorney, who was officially appointed on March 17, 2003, filed a Withdrawal of Notice of Rescind of Signature [sic] on March 13, 2003, withdrawing Mother's pro se motion.

{4} The adjudicatory hearing was held on June 11 and June 16, 2003. Mother denied any wrongdoing. She testified that when she arrived home on January 2nd and went to check on Child, Child was lying face down on the bed and was not breathing. The only expert witness to testify was Dr. Karen Campbell, a pediatrician who specializes in child abuse and neglect. Dr. Campbell was employed by the UNM School of Medicine and served as the Medical Director for CYFD. Dr. Campbell stated that the resident in the Pediatric Intensive Care Unit at UNM Hospital, where Child was taken on January 3, 2003, had contacted her (Dr. Campbell) at the request of the attending physician and requested that she perform an evaluation of Child and his injuries. Dr. Campbell examined Child, his records, past history, and the diagnostic studies that had been performed on Child. Dr. Campbell testified that Child's injuries were caused by pressure on both cartoid arteries in the neck—in other words, manual strangulation. Dr. Campbell was questioned about alternative causes of Child's injuries, specifically about explanations offered by Mother in her statement to police following the incident. Dr. Campbell testified that these explanations were inconsistent with Child's injuries, and that in her opinion, the only explanation for Child's injuries was manual strangulation. Based on this testimony, at the conclusion of the hearing the court made oral findings that Child was abused pursuant to the Abuse and Neglect

1. Michael Vigil, who was named in the Petition as Child's father, was initially charged with neglect. He was later dismissed from the action after a DNA test showed that he was not Child's biological father. Lobato was also later dismissed.

Act. *See* NMSA 1978, 32A–4–2 (1993, as amended through 1999).

{5} On June 30, 2003, Mother filed two motions on her own, a Motion to Reconsider and a Motion for a Specialist. On July 8, 2003, Mother's second attorney filed a Motion to Withdraw as Counsel, citing "irreconcilable differences" and stating that Mother had "returned to her former practice of preparing and filing pleadings on her own behalf in this cause without the knowledge, advise [sic] or consent of her attorney. . . ." The court allowed the attorney to withdraw after he had filed Proposed Findings of Fact and Conclusions of Law. A third attorney was appointed on August 6, 2003. The court filed its Findings of Fact and Conclusions of Law on August 18, 2003, in which the court found that there was clear and convincing evidence that Mother had abused Child. On November 3, 2003, the court entered a Judgment, incorporating the court's Findings of Fact and Conclusions of Law by reference. The trial court never ruled on Mother's pro se motions and Mother's third attorney took no further action on them. This attorney filed an appeal on January 16, 2004, arguing that "[t]he existence of alternative explanations for the child's injuries do not establish abuse at the hands of Respondent by clear and convincing evidence," and that there were "[o]thers were on the premises at the time of the injuries . . ." who might have caused the injuries.

{6} The Court of Appeals affirmed the trial court in a memorandum opinion. The Court held that Mother's appeal was based on her argument in her motions filed on June 30th that she was denied due process at the adjudicatory hearing because the trial court failed to appoint an expert to render a second opinion. The Court of Appeals framed the issue as whether the trial court abused its discretion by implicitly denying the motions. The Court stated that the trial court did not abuse its discretion because there was no factual showing or legal authority in Mother's motions that supported her contention that she was entitled to a second medical opinion or that she was denied an opportunity to present a defense. Thus, the Court concluded that Mother had not been denied due process of law. Mother appealed. We granted certiorari to determine whether Mother was denied due process of law by the trial court's failure to appoint a qualified forensic medical expert to assist Mother.

{7} Pending resolution of this case, the parties filed a Joint Notice of Change of Child's Status informing this Court that Mother relinquished her parental rights to Child. The parties assert that this case is not moot, because Mother has given birth to an infant who was immediately taken into custody by CYFD based on the findings by the trial court in this case.

## II. Discussion

### A. Mootness

{8} We agree that this case is not moot. "A case is moot when no actual controversy exists, and the court cannot grant actual relief." *Gunaji v. Macias,* 2001–NMSC–028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 (quoted authority omitted). Mother still has an interest in trying to overrule the finding that she abused Child, due to the case involving her newborn child. Additionally, this case falls under the recognized exception to the New Mexico mootness doctrine allowing for review of cases that present issues of substantial public interest. *See id.* ¶ 10. The constitutional right to the appointment of an expert in an abuse and neglect adjudicatory proceeding is one of first impression in New Mexico.

### B. Preservation

{9} We next address CYFD's argument that Mother did not preserve her claim. "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked. . . ." Rule 12–216(A) NMRA; *see also Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). It is undisputed that Mother did not raise the issue before or during the adjudicatory proceeding. Mother's Motion to Reconsider and Motion for a Specialist were filed two weeks after the proceeding. The trial court, by failing to rule on Mother's motions, implicitly denied them. *See* NMSA 1978, § 39–1–1 (1917).

{10} Mother, citing to *Madrid v. Roybal,* 112 N.M. 354, 356, 815 P.2d 650, 652 (Ct.App. 1991), argues that these motions preserved the issue, because they alerted the trial court to the alleged error before the entry of the court's final findings and judgment, giving the trial court the opportunity to correct the error. We agree. In her motions, Mother asserted that she was denied due process and asked the court to pay for an expert to render a second opinion as to the cause of Child's injuries. These motions, although filed after the proceeding, were filed about a month and a half before the trial court entered its Findings of Fact and Conclusions of Law, and about four months before the entry of the judgment. We find that this was adequate to preserve Mother's due process claim. *See Ramirez v. Ramirez,* 1996–NMCA–116, ¶ 9, 122 N.M. 590, 929 P.2d 982 (concluding issue was adequately preserved because motion to reconsider was filed before trial court entered order).

**C. Standard of Review**

{11} "We apply a de novo standard of review to answer the question of whether a parent was afforded due process in abuse and neglect proceedings." *State ex rel. Children, Youth & Families Dep't v. Maria C.,* 2004–NMCA–083, ¶ 36, 136 N.M. 53, 94 P.3d 796 (citing *State ex rel. Children, Youth & Families Dep't v. Mafin M.,* 2003–NMSC–015, ¶ 17, 133 N.M. 827, 70 P.3d 1266).

**D. Due Process in Neglect and Abuse Proceedings**

{12} We have held that neglect and abuse proceedings must be conducted in a manner that affords parents constitutional due process, because "[t]he interest of parents in the care, custody, and control of their children is a fundamental liberty interest." *In re Pamela A.G.,* 2006–NMSC–019, ¶ 11, 139 N.M. 459, 134 P.3d 746. Therefore, at a minimum, due process in neglect and abuse proceedings requires "timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decision-maker." *Id.* ¶ 12 (quoting *State ex rel. Children, Youth & Families Dep't v. Lorena R.,* 1999–NMCA–035, ¶ 26, 126 N.M. 670, 974 P.2d 164) (internal quotation marks omitted).

{13} In her pro se motions, Mother requested the appointment of an expert to give her a second opinion at the cost of the State, because she was indigent. On appeal she argues that an expert would "almost certainly have significantly decreased the risk of an erroneous decision by allowing full evaluation by the court of Dr. Campbell's conclusions and full consideration of alternative explanations for Child's condition."

{14} "[D]ue process is a flexible right and the amount of process due depends on the particular circumstances of each case." *State ex rel. Children, Youth & Families Dep't v. Lorena R. (In re Ruth Anne E.),* 1999–NMCA–035, ¶ 17, 126 N.M. 670, 974 P.2d 164. In *Pamela A.G.,* this Court adopted the well-known test articulated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine whether the trial court's procedures met the requirements of due process. *Pamela A.G.,* 2006–NMSC–019, ¶ 13, 139 N.M. 459, 134 P.3d 746. This test requires the consideration and balancing of three factors: (1) the private interest at stake; (2) the government's interest; and (3) whether the procedures used by the trial court increased the risk of an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards. *Id.; see also Mafin M.,* 2003–NMSC–015, ¶ 19, 133 N.M. 827, 70 P.3d 1266. A parent's interest in maintaining a relationship with his or her child and the government's interest are "strong countervailing interests," *id.* ¶ 20, which are "equally significant." *Pamela A.G.,* 2006–NMSC–019, ¶ 13, 139 N.M. 459, 134 P.3d 746. Therefore, the determinative factor is whether the procedures used by the trial court increased the risk of an erroneous deprivation of the parent's interest, and whether additional or sub-

stitute safeguards would eliminate or lower that risk. *Mafin M.*, 2003–NMSC–015, ¶ 20, 133 N.M. 827, 70 P.3d 1266. This determination does not depend on whether the parent can prove that he or she would have prevailed with additional or substitute safeguards. *Pamela A.G.*, 2006–NMSC–019, ¶ 14, 139 N.M. 459, 134 P.3d 746. The parent "need only demonstrate that there is a reasonable likelihood that the outcome might have been different." *Id.* (quoting *Maria C.*, 2004–NMCA–083, ¶ 37, 136 N.M. 53, 94 P.3d 796) (internal quotation marks omitted).

{15} The main issue at the adjudicatory proceeding in the present case was the cause of Child's injuries. This is a complex issue that is difficult to address without expert assistance. *See Laderer v. St. Rita's Med. Ctr.*, 122 Ohio App.3d 587, 598, 702 N.E.2d 476, 483 (1997) ("Expert testimony is needed on complex issues outside the area of common knowledge, such as an injury's cause and effect."). The only expert to testify was CYFD's expert, who also served as the medical director for CYFD. The trial court based its conclusion that Mother abused Child almost exclusively on the expert's determination that the only possible cause of Child's injuries was manual strangulation.

{16} Thus, in certain circumstances, due process may require the appointment of an expert witness at the State's expense to an indigent parent in a neglect and abuse proceeding. We hold that when there is an increased risk of an erroneous deprivation of the parent's interest without the appointment of an expert, an indigent parent is entitled to the appointment of an expert witness at the State's expense.

{17} However, due to the particular facts and circumstances of the present case, unless Mother has an expert willing to testify regarding alternative causes of Child's injuries, we cannot determine whether there is a reasonable likelihood that the outcome of the trial might have been different. Thus, we conclude that whether there was an increased risk of an erroneous deprivation of Mother's interest depends on whether she has such an expert. The record is unclear. The record shows that Mother gave the name of a doctor to her attorney to contact regarding an alternative theory of the cause of Child's injuries. At the pretrial hearing, Mother's attorney stated that he still needed to interview this doctor and another potential witness. However, the expert did not testify at the adjudicatory proceeding. Thus, we do not know whether Mother's attorney contacted the doctor or any other expert. It is possible that the attorney contacted the doctor or searched for other potential experts and could not locate one, or decided that an expert would not be helpful to Mother's defense.

{18} Therefore, before we can conclude that without the appointment of an expert there was an increased risk of an erroneous deprivation of Mother's interest, further proceedings in the trial court are necessary. Mother must show that she has a viable expert, that is, one who will testify regarding alternative causes of Child's injuries.

### III. Conclusion

{19} We conditionally affirm and remand to the trial court to give Mother the opportunity to show that she has a viable expert. *See State ex rel. Children, Youth & Families Dep't. v. Tammy S.*, 1999–NMCA–009, ¶ 28, 126 N.M. 664, 974 P.2d 158 (conditionally affirming and remanding for an evidentiary hearing). If Mother is able to make such a showing, then Mother is entitled to a new hearing with an expert's assistance. If Mother fails to make such a showing, then the decision of the trial court is affirmed.

{20} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, Justices.

EDWARD L. CHÁVEZ, Chief Justice, and RICHARD C. BOSSON, Justice (specially concurring).

CHÁVEZ, Chief Justice (specially concurring).

{21} I concur in Part II.B of the majority opinion, which holds that Mother adequately preserved her due process claim. I also agree that this case requires us to analyze Mother's claim that she was denied due process under the *Mathews* test, which we ap-

plied to neglect and abuse proceedings in *Pamela A.G.* And, I agree that this case hinges on whether there is a serious risk to Mother of an erroneous deprivation through the procedures used, and whether there is significant value of additional procedural safeguards. Thus, I concur in the majority's decision to remand the case to the trial court for further proceedings. However, I write separately for two reasons. One, I would require the indigent parent to specify: (a) how the expert would be useful in relation to the allegations against the parent; (b) the type of expert desired; and (c) why the particular type of expert is necessary. Two, I would also not limit the appointment of an expert to a situation where the parent shows he or she has a testifying expert. The necessity for an expert may include assisting with gathering facts, inspecting evidence, or conducting tests or examinations to assist defense counsel in confronting the State's case against the parent, including preparing for cross-examining the State's expert witness and helping to develop a defense theory. I believe our analysis can be guided by *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), a case in which the United States Supreme Court considered whether due process concerns required a trial court to appoint an expert for an indigent defendant.

{22} As a preface to discussing the case law in this area, it is important to summarize CYFD's expert testimony as to the mechanics of the manual strangulation, which I believe illustrates why Mother may have needed the assistance of her own expert. According to Dr. Campbell, the manual strangulation causing Child's injury resulted from someone applying simultaneous pressure to both sides of the neck, thereby compressing the carotid arteries and preventing blood flow to the brain. Dr. Campbell testified that to cause the types of injuries Child suffered, someone would have had to apply pressure to Child's neck for three to five minutes. In sum, Dr. Campbell's testimony was that Child's injuries resulted from someone applying enough simultaneous pressure to both carotid arteries for three to five

minutes to block the blood flow to Child's brain, but also lightly enough not to cause bruising, since no bruises were found on Child's neck. Dr. Campbell also testified that this was the only explanation for Child's injuries. As the majority opinion recognizes, the cause of Child's injuries "is a complex issue that is difficult to address without expert assistance," *see* Maj. Op. ¶ 15, and this testimony demonstrates why providing Mother with her own expert might have assisted her as she prepared her defense and cross-examination of Dr. Campbell, who was the only expert who testified at the adjudicatory hearing.

{23} There is very little, if any, case law addressing whether an indigent parent is entitled to an expert to assist in preparing a defense to a neglect and abuse proceeding. At least two cases addressed the issue in the context of a termination of parental rights proceeding, but *Ake*, and most of the other cases applying *Ake*, involve criminal proceedings. *See In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426, 430–31 (1993) (applying the *Mathews* test and determining that the parent was entitled to the assistance of a psychiatrist); *In re J.T.G.*, 121 S.W.3d 117, 130 (Tex.App.2003) (declining to extend *Ake* outside the criminal context). Yet the United States Supreme Court in *Ake* noted that in a previous case it had extended due process to "quasi-criminal" proceedings, like paternity actions, to afford an indigent person meaningful access to justice. 470 U.S. at 76–77, 105 S.Ct. 1087 (citing *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981)). Because neglect and abuse proceedings are quasi-criminal, I believe it is appropriate to look to *Ake*, and other criminal cases applying *Ake*, for guidance.[1]

{24} In *Ake*, the defendant asserted a defense of insanity after he shot and killed a couple and wounded their two children. 470 U.S. at 70–72, 105 S.Ct. 1087. Because the defendant could not afford to pay for a psychiatric expert, his counsel asked the court to arrange for a psychiatrist, or to provide fund-

---

1. Additionally, although *Ake* involved the appointment of a psychiatric expert, the majority of courts have determined that *Ake* applies to non-

psychiatric experts as well. *Moore v. State,* 390 Md. 343, 889 A.2d 325, 337 (2005).

ing for defense counsel to do so. *Id.* at 72, 105 S.Ct. 1087. The trial court denied the request. *Id.* Therefore, the defendant could not introduce his own expert testimony or rebut the state's expert testimony that the defendant was dangerous to society. *Id.* at 73, 105 S.Ct. 1087.

{25} The United States Supreme Court found that indigent defendants must be provided the "basic tools of an adequate defense or appeal" if they cannot afford to pay for them. *Id.* at 77, 105 S.Ct. 1087 (quoted authority omitted). In applying the *Mathews* test, the Court determined that "the governmental interest in denying [the defendant] the assistance of a psychiatrist is not substantial, in light of the compelling interest of both the State and the individual in accurate dispositions." *Id.* at 79, 105 S.Ct. 1087. In examining the probable value of the assistance sought by the defendant from the expert, and the risk of erroneous deprivation, the Court held that

> without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the cross-examination of a State's psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high.

*Id.* at 82, 105 S.Ct. 1087. The Court further held that if a "defendant is able to make an *ex parte* threshold showing ... that his sanity is likely to be a significant factor in his defense," then the trial court should provide a defendant with access to an expert at the State's expense. *Id.* at 82–83, 105 S.Ct. 1087.

{26} The United States Supreme Court has not directly addressed the level and specificity of the threshold showing entitling an indigent defendant to an expert's assistance. However, in *Caldwell v. Mississippi*, the Court did make clear that the denial of an expert stemming from "undeveloped assertions that the requested assistance would be beneficial" does not result in a deprivation of due process. 472 U.S. 320, 324 n. 1, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

{27} In *Moore v. Kemp*, the Eleventh Circuit found "*Ake* and *Caldwell*, taken together, hold that a defendant must demonstrate something more than a mere possibility of assistance from a requested expert." 809 F.2d 702, 712 (11th Cir.1987). The court then determined that an indigent defendant must show there "exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Id.* (footnote omitted). In making this showing, the court required the defendant to provide the trial court with a description of the usefulness and necessity of an expert in the preparation of a defense. *Id.* The court required a "substantial showing ... of a significant benefit to the truth-seeking function of a trial." *Id.* n. 8.

{28} In *Moore v. State*, the Maryland Court of Appeals adopted the Eleventh Circuit's standard for a threshold showing entitling a defendant to an expert, noting that the majority of courts considering the issue had also done so. 390 Md. 343, 889 A.2d 325, 339–40 (2005). The court emphasized that due process requires appointment of an expert "when the defendant makes a particularized showing of the need for assistance of ... experts." *Id.* at 339. The court held it unnecessary for a defendant to "display a highly sophisticated understanding of the contribution the requested expert would make to the defense," but must be able to explain why the requested expert was necessary. *Id.* at 340.

{29} In my opinion, *Ake*, as well as case law construing *Ake*, can help courts determine whether an indigent parent is entitled to the assistance of an expert. Certainly an analysis of the *Mathews* factors is necessary in our decision, just as the majority opinion holds. But, *Ake* builds on the *Mathews* factors and requires an indigent parent to make a threshold showing that the issue at stake is a significant factor in the parent's defense, thus requiring an expert's assistance. This aids a court's determination of whether there is a serious risk of erroneous deprivation and whether there is a significant value of additional procedural safeguards. Because the parent's interest in maintaining a parental relationship with the child and the government's interest in protecting the child have

equal weight, as noted by the majority opinion, decisions as to whether a defendant is entitled to an expert's assistance will inevitably turn on the erroneous deprivation factor. As such, I believe utilizing the *Ake* framework will provide more clarity to trial courts and indigent parents as to the proper showing that is required to entitle a parent to an expert's assistance.

{30} Concluding, as the majority does, that Mother is entitled to an expert only if she has an expert that can testify as to a viable alternate theory about Child's injuries may not necessarily be the outcome of an analysis that applies *Ake*. Under *Ake's* framework, Mother is entitled to an expert if she can make a threshold showing to the trial court that the cause of the Child's injuries is a significant factor in her defense. Mother can do so by demonstrating a reasonable probability that an expert would be of assistance to her and that without an expert's assistance, Mother's trial would be fundamentally unfair. *See Kemp*, 809 F.2d at 712. If Mother meets this burden, then she has demonstrated a reasonable likelihood of a different outcome as required by *Pamela A.G.*, and, thus, a serious risk of erroneous deprivation. Such a showing would demonstrate that the assistance of an expert would be of significant value in meeting the due process rights of an indigent parent.

{31} Therefore, I would remand to the trial court and allow Mother an opportunity to establish a threshold showing that she is entitled to an expert's assistance at the State's expense. In attempting to establish the requisite showing, Mother should include a specific description of how the expert would be useful in relation to the allegations against her. Additionally, Mother should include a specific description of the type of expert she desires and why that particular type of expert is necessary. Mother is not required to provide the trial court with a detailed analysis of the expert's assistance, but the parent's counsel must "inform himself about the specific scientific area in question and [ ] provide the court with as much information as possible concerning the usefulness of the requested expert to the [parent's] case." *See id.*

{32} With respect to the usefulness of an expert, I would also make clear that a parent may demonstrate the usefulness of a defense expert in ways other than simply providing testimony in the case. The majority opinion focuses solely on whether Mother has an expert willing to *testify*, but experts can assist a parent with a defense in other meaningful ways. *See id.* at 709–710. This includes fact gathering, examining evidence, or providing other assistance to defense counsel in confronting the State's case against the parent. The expert can also help prepare for cross-examining the State's expert witness, and assist in developing a defense theory. *Id.* at 709.

{33} In my opinion, this issue is vitally important in abuse and neglect proceedings because determining whether a parent is entitled to the assistance of a court-appointed expert could be the deciding factor in the case. Without an expert's assistance in certain cases, an innocent parent may be adjudged to have abused or neglected his or her child, which could then lead to the termination of parental rights simply because the parent could not afford an expert. As a result, I believe we must provide a trial court with the appropriate guidance required to make such a crucial decision.

{34} For these reasons, I respectfully specially concur.

I CONCUR: RICHARD C. BOSSON, Justice.