GARCIA, Judge (concurring in part, dissenting in part). {45} I respectfully disagree with the majority and would reverse the neglect determination against Father. {46} The majority determined that sufficient evidence exists to support a neglect determination against Father by clear and convincing evidence. For the reasons stated herein, I disagree with this determination. In addition, the majority determined that the district court properly denied Father’s motion to dismiss. I agree in part with the majority that the petition was sufficient to state a claim against Father pursuant to Rule 10 — 322(B)(6). I disagree with the majority regarding any other determination or analysis of why Father was a proper respondent in this case. {47} It is undisputed that the Department’s abuse and neglect proceedings against Mother and Stepfather were appropriate and supported by sufficient evidence. In its argument, however, the majority makes inferences and reaches certain conclusions regarding Father that are not supported by the facts of this case. Evidence Against Father Was not Clear and Convincing {48} The Department has failed to establish that Father neglected his daughter, Evonne. The majority agrees that the Department must establish Father’s neglect by clear and convincing evidence. Majority Opinion ¶ 18. In determining whether this burden is met, “[the Department] must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder’s mind is left with an abiding conviction that the evidence is true.” Shawm C., 2005-NMCA-066, ¶ 7, 137 N.M. 687, 114 P.3d 367 (internal quotation marks and citation omitted). Father argues that the district court lacked sufficient evidence to find that he neglected Evonne. The crux of the majority’s opinion is that Father complacently sat by for years and did nothing to protect the Children, thus neglecting them. Majority Opinion ¶¶ 21-24. {49} Prior to June 2006, some evidence exists that Father had not taken more than his designated and intermittent role in the care of the Children. The Department was concerned about Father’s sporadic communication and interaction with their office. By June 2006, however, Father was involved in the custody and housing arrangements for the care of the Children. Father initiated the petition for an order of protection against Mother and was engaged in telephonic communication with the Department. In addition, Father fully cooperated and agreed with the fictive-kin arrangement that was approved by the Department. From June 2006 through the TDMM on April 9, 2007, there was no evidence that Father was failing in his parental responsibilities, was failing to cooperate with the Department, or was failing to cooperate with the fictive-kin arrangement. {50} In February 2007, it was the Department that unilaterally removed all five of the Mother’s children, including Evonne, from fictive kin’s home and placed them back with Mother for a trial home visit (without any notice to or consent from Father). The Department failed to produce any evidence that its removal of Evonne from the fictive kin’s home in 2007 and returning her to the abusive home of Mother and Stepfather was appropriate. But for Mother’s newest incident of abuse and neglect arising during the 2007 trial home visit arranged by the Department, everything being done by Father and fictive kin was appropriate for the care of the Children. When Mother unilaterally disrupted the fictive-kin arrangement at the TDMM, the Department never called Father to discuss the situation. {51} The majority states that, considering the historical circumstances, the Department did enough in 2007 by calling and inviting Father to attend the TDMM. Majority Opinion ¶24. The purpose of the TDMM was to advise Mother that, as a result of the trial home visit being disrupted, her three youngest children would not be immediately returned to her and would be placed in foster care with fictive kin. The record does not reflect that the TDMM was called to deal with the custody arrangement for Evonne. The Department had only taken custody of Mother and Stepfather’s three youngest children in June 2006. Fictive kin was the only person entrusted with the voluntary care of Evonne. When the trial home visit was disrupted, Evonne was returned to the safety of fictive kin’s home prior to the TDMM. Therefore, Evonne’s security, custody, and care with fictive kin was back in place before the date that the TDMM occurred. {52} I disagree with the majority’s determination that Father had a parental obligation to address the Department’s concerns regarding Mother’s disruption of the trial home visit when he was invited to attend the TDMM to address Mother’s three youngest children in Department custody. Father had no reason to address any issues regarding Mother’s three youngest children at the TDMM. The TDMM was not initiated to address Evonne or the arrangements for her care with fictive kin. In reality, the record supports the opposite. The Department and fictive kin were surprised by the unilateral announcement at the TDMM that Mother was going to immediately pick up Evonne and Johnny from fictive kin’s home. Emergency measures had to be initiated to address this surprise announcement. Without some hint that the Department was requiring Father to attend the TDMM, the invitation to participate in this meeting cannot be transformed into an act of Father’s neglect because the meeting was disrupted by Mother’s unexpected rage. This is not evidence of Father’s neglect and was never asserted to be evidence of Father’s neglect during the testimony from any of the Department’s witnesses at the evidentiary hearing. {53} I disagree with the majority that the Department had no obligation to inform Father of the emergency situation created by Mother’s enraged conduct at the TDMM before filing a petition asserting that Father was neglecting Evonne. The Department’s failure to contact Father after the TDMM prevented him from pro-actively fulfilling his obligations to make alternative arrangements for the proper care of his daughter. Mother’s unexpected rage at the TDMM is the type of compelling event that would only be sufficient to instantly tilt the scales in the affirmative regarding an allegation of neglect against Mother. This evidence is not sufficient to make such a determination against Father and should not have been used against him without first providing Father with the opportunity to protect his daughter. {54} The majority inappropriately faults Father for allowing the Children to voluntarily reside with fictive kin. Majority Opinion ¶¶ 25, 27. Such a determination is contrary to our established precedent. See generally Ashleigh R, 2002-NMCA-103, ¶ 20, 132 N.M. 772, 55 P.3d 984 (“Evidence that a parent left a child in the care of others is not necessarily sufficient to establish neglect, as long as the parent continues to insure that the caretaker is properly providing for the children’s needs. A contrary rule would have the unfortunate effect of discouraging parents from seeking assistance when they find themselves unable to fully discharge the responsibilities of parenthood.” (citation omitted)). The record indicates that the voluntary placement with fictive kin provided a dedicated and comfortable environment for the Children. After placement with fictive kin in 2006, nothing in the record establishes that Father did anything to disrupt or violate the fietive-kin arrangement. The record, including the Department’s two petitions filed in May 2007, fails to identify any new action or failure to act by Father in 2007 to establish a basis for neglect against Father. The determination of neglect against Father was based upon the inappropriate actions of Mother, combined with Father’s absence from the TDMM and his historical interaction with the Department prior to the fictive-kin arrangement. Majority Opinion ¶¶20-23. {55} The majority improperly uses stale evidence against Father to support a neglect determination in 2007. Majority Opinion ¶¶ 21-23. Stale evidence is regularly rejected in proceedings involving termination of parental rights. State ex rel. Children, Youth & Families Dep’t v. Lance K, 2009-NMCA-054, ¶ 26, 146 N.M. 286, 209 P.3d 778 (2009) (stating that stale evidence cannot be relied upon by the Department “for the purpose of determining whether those conditions persisted” (internal quotation marks and citation omitted)); Natural Mother, 96 N.M. at 679, 634 P.2d at 701. However, so-called old evidence can be considered when it is relevant to the termination proceedings. See William M., 2007-NMCA-055, ¶ 65, 141 N.M. 765, 161 P.3d 262; Amy B., 2003-NMCA-017, ¶¶ 10, 15-18, 133 N.M. 136, 61 P.3d 845. {56} The majority’s analysis of the stale evidence issue in this case misses the point focused upon in this dissent. Majority Opinion ¶¶ 36, 39-41. I agree with the majority that stale evidence should be relevant in many abuse and neglect cases. Where there are fresh allegations and evidence of abuse or neglect, stale evidence is relevant and appropriately admitted to establish an ongoing history and pattern of abuse or neglect. However, this argument is not appropriate to support the position that stale evidence alone is sufficient to establish a current allegation of abuse or neglect where no fresh evidence of neglect exists against a parent. Under circumstances such as these, the precedent excluding stale evidence should apply and I would extend the stale evidence rule to apply to neglect proceedings under the factual circumstances of this case. State ex rel. Children, Youth & Families Dep’t. v. Maria C., 2004-NMCA-083, ¶ 25, 136 N.M. 53, 94 P.3d 796 (recognizing that the process for terminating parental rights is a continuum of proceedings beginning with the filing of the neglect or abuse petition). Otherwise, the Department is entitled to continuously hold any stale evidence over the head of a parent until young children reach the age of majority. Without fresh evidence of abuse or neglect, the Department’s use of this stale evidence is unjust. The prejudice placed upon a parent to defend against stale allegations of neglect must be given serious scrutiny. {57} Relying exclusively on stale evidence is improper, especially applied to the facts of the present case. The Department never once, over a period of five years, alleged or hinted that Father had neglected the Children. As late as June 2006, the Department was still attempting to place the Children in the temporary custody of Father. Father’s fitness to care for the Children was never questioned by the Department before May 2007. The fictive-kin arrangement had the Department’s full approval and would not have been disrupted except for the enraged actions of Mother. The Department was unable to include any specific factual allegation (stale or fresh) regarding Father’s actions in either petition filed in May 2007. {58} The majority has determined that there is sufficient evidence to establish that Father committed a recent act of neglect when he failed to attend the TDMM. I disagree with this determination, and the remaining stale evidence should not have been used to establish a current determination of neglect against Father. As a result, the Department did not present clear and convincing evidence of Father’s neglect. Adequacy of the Department’s Petition {59} I respectfully disagree with several of the reasons stated by the majority regarding why Father should be a respondent in this case. The district court properly denied Father’s motion to dismiss pursuant to Rule 10-322(B)(6). Father only raised the defense of “failure to state a claim” in his previous district court response and at his argument at the adjudicatory hearing. Father did not raise any due process or other constitutional challenges to the Department’s petition. In addition, Father did not assert that our Supreme Court has required the Department to provide more specific information beyond standard notice pleading on Form HM54 NMRA. These additional issues were not adequately raised by Father or properly preserved below. The motion was properly dismissed under a failure to state a claim analysis because the incorporation of the unstated language in the referenced statute, Section 32A-4-2(E)(2), provided sufficient information to state a claim under a narrow Las Luminarias analysis. Las Luminarias, 92 N.M. 297, 587 P.2d 444. Overlapping constitutional and legal issues that Father did not raise in this case should not be addressed on appeal. See In re John Doe, 98 N.M. 540, 541, 650 P.2d 824, 825 (1982). If the due process issues had been properly raised and preserved by Father, I would also consider reversing the district court on due process grounds for failure to state any information that adequately informed Father of the claim of neglect against him. Kathleen D.C., 2007-NMSC-018, ¶ 12,141 N.M. 535,157 P.3d 714. Whether Father Should be a Respondent in This Case {60} The majority justifies its position by stating that, as a practical matter, the Children’s Code places a paramount concern that the Department focus upon a child’s interest over rights of a non-custodial parent. Majority Opinion ¶¶ 37-38. The majority recognizes the legal and procedural difficulties that arise when the Department proceeds to adjudicate an abuse or neglect determination against only one parent. Majority Opinion ¶¶ 31-33. These problems are further magnified in this case where the neglectful Mother is remarried and has three children with Stepfather. Despite this inconvenience, it would be a miscarriage of justice to allow the Department to include Father in its petition simply to eliminate the procedural difficulties faced by the Department, or as a convenient means to avoid splitting up the five children while this neglectful Mother and Stepfather undergo another round of treatment, counseling, and reunification attempts. {61} I cannot agree with a policy that justifies including Father as an additional respondent to a neglect proceeding because it will establish a better process for the Department to provide formal assistance, oversight, and protection against the neglectful Mother. Acknowledging Father’s custodial rights presented a more complex situation for the Department in structuring a care plan for all five of Mother’s children. However, the Department’s preferences for a unified supervisory process do not trump a parent’s constitutional rights to provide care and make decisions about their children. See Kathleen D.C., 2007-NMSC-018, ¶ 14, 141 N.M. 535, 157 P.3d 714 (“A parent’s interest in maintaining a relationship with his or her child and the government’s interest are strong countervailing interests, which are equally significant.” (internal quotation marks and citations omitted)); In re Jane Doe, 98 N.M. 198, 200, 647 P.2d 400, 402 (1982) (“We begin by emphasizing that parental rights are among the most basic rights of our society and go to the very heart of our social structure.” (internal quotation marks and citation omitted)); Maria C., 2004-NMCA-083, ¶ 24, 136 N.M. 53, 94 P.3d 796 (“A parent’s fundamental liberty interest in the care, custody, and management of their children is well established.”). While I recognize that the Department is entrusted with protecting the best interests of children, it cannot take lightly its interference with a parent’s constitutionally protected rights. Department processing preferences and efficiencies should never be considered as the paramount concern in any determination of whether a parent neglected his or her child. {62} The majority opinion states that throughout the years Father was complacent and failed to be pro-active in the care of the Children. Majority Opinion ¶¶ 29, 31. I disagree with this factual assessment of Father’s involvement to support the Department’s decision to include Father as a proper party to these proceedings. Father regularly visited the Children and had them stay with him on weekends. Father testified that he paid child support in cash, and the district court recognized such payments and ordered continuing payments be made for Evonne. Johnny lived with Father for a period of time in 2002-2003. In an effort to protect Evonne in 2006, Father filed a petition for order of protection from domestic abuse against Mother. Recognizing his own limitations in caring for the Children in June 2006, Father agreed to the arrangement for fietive kin to insure that the Children were properly cared for in fietive kin’s home. Father’s actions constitute more than simple complacency as asserted by the majority. I can only conclude that Father was added to these proceedings in order to eliminate the procedural difficulties confronted by the Department in this case or as a convenient means to avoid splitting up the five children while Mother underwent another round of treatment, counseling, and related efforts toward reunification. Department procedural preferences and efficiencies should never be utilized as the basis for the determination of whether a parent has neglected his or her child. {63} Father’s motion to dismiss was properly denied pursuant to Rule 10-322(B)(6), but should not be denied for any of the other reason stated by the majority. For the reasons stated herein, I would reverse the district court’s determination and judgment establishing that Father neglected the Children by clear and convincing evidence.