# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMCA-067

Filing Date: April 27, 2015

Docket No. 33,605

STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH AND
FAMILIES DEPARTMENT,

       Petitioner-Appellee,

v.

MELVIN C.,

       Respondent-Appellant,

and

SAMANTHA M.,

       Respondent,

IN THE MATTER OF DAEVON DRE C.,

       Child.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Sandra A. Price, District Judge

Children, Youth and Families Department
Charles E. Neelley, Chief Children's Court Attorney
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Alex Chisholm
Albuquerque, NM

for Appellant

Richard J. Austin, PC
Richard J. Austin
Farmington, NM

Guardian Ad Litem

**OPINION**

**KENNEDY, Judge.**

**{1}**     This case resides between our Opinion in *State ex rel. Children, Youth & Families Dep't v. Christopher B.*, 2014-NMCA-016, 316 P.3d 918, and the Supreme Court's Opinion in *In re Grace H.*, 2014-NMSC-034, 335 P.3d 746.  In this case, we hold that, when a parent pleads no contest to abuse and neglect and the lower court proceeds with an adjudication on that basis, the court, if it terminates parental rights, must  proceed under NMSA 1978, Section 32A-4-28(B)(2) (2005).  The children's court (hereinafter, the court) erred here by ignoring its earlier adjudication and changing course, absent a dispositional hearing based on its finding of neglect.  It erred by allowing termination of parental rights by presumptive abandonment under NMSA 1978, Section 32A-4-22(B)(1) and (B)(3) (2005) when it had already adjudicated neglect.  Father wished to make efforts toward reunification by pursuing a treatment plan as the court and the Children, Youth and Families Department (CYFD) had discussed with him at the time of the adjudication of neglect.  The court was obligated to proceed under Section 32A-4-22(B)(2) to resolve Father's case.  We therefore reverse the court's termination of Father's parental rights.

**I.     BACKGROUND**

**{2}**     Child was born in March 2013 to Melvin C. (Father) and Samantha M. (Mother) and tested positive for illegal drugs.  Following a Family Centered Meeting on March 5, 2013, where Father and Mother appeared telephonically, an amended neglect or abuse petition was filed by CYFD.  The court entered an ex parte custody order on March 7, 2013, giving CYFD legal and physical custody of Child.  A custody hearing was held on March 18, 2013, which Father did not attend.  During that hearing, the court found that Child could not be safely returned to Father and Mother due to substance abuse and "the inability to provide safe housing."  A custody hearing order filed on April 8, 2013, provided notice of a subsequent adjudicatory and dispositional hearing.  On August 6, 2013, CYFD filed a motion for termination of parental rights as to both Father and Mother, alleging abandonment, abuse and neglect, and presumptive abandonment as grounds for termination.  Father had no contact with Child or CYFD from March 2013 until September  2013, when he was served with the petition for neglect and abuse in a prison in Colorado to which he had been sentenced a few months earlier.  The court set a hearing for October 28, 2013, on CYFD's abuse/neglect petition and its motion to terminate parental rights (TPR).  The court granted a continuance of that hearing, and counsel for Father requested that the court move forward with the adjudicatory hearing, but postpone the TPR hearing that had been

scheduled. Accordingly, Father filed a motion to continue the TPR hearing. The motion stated, in particular, that Father "want[ed] to participate and work a treatment plan in an attempt to reunify with [Child]." The motion requested that the court vacate the portion of the upcoming November 4, 2013, hearing "pertain[ing] to the termination of [his] parental rights" so that Father has the "opportunity to work a treatment plan" and can "move toward[] reunification with . . . [C]hild." The motion was granted, and the court subsequently filed a notice of hearing, identifying the November 4 hearing as an adjudicatory hearing as to Father only. As to Mother, however, the purpose of the November 4 hearing was to allow CYFD to pursue termination of Mother's parental rights.

**{3}** At the November 4 hearing that Father entered a no contest plea to an allegation of neglect under NMSA 1978, Section 32A-4-2(E)(2) (2009). The court questioned Father about the nature of his plea and explained "the possible dispositions for a finding of neglect." In doing so, the court explained what would happen if there was a stipulation to neglect in the form of a plea: "The court will hear from [CYFD] and the court will enter a finding, pursuant to your agreement, to a finding of neglect." Father pleaded no contest to neglect and abuse, and Child was so adjudicated as to Father.

**{4}** While CYFD pursued termination of Mother's parental rights based on abandonment during the November 4 hearing, Father's involvement was limited to the neglect and abuse adjudication. The court explained to Father that one of the consequences of its making a finding of neglect was the development of a treatment plan. Father stated that he understood the court's explanation. In the course of establishing the factual basis for the plea, CYFD made a short statement, concluding that, for a variety of reasons, Father was "unable to provide the needs of . . . Child." CYFD's only reference to abandonment by Father came in the context of the TPR hearing against Mother at that time. Despite CYFD's failure to mention abandonment as grounds for an adjudication of neglect as to Father, the court added: "I'm assuming also part of this is, you mentioned it, but also based on a failure to provide because he abandoned . . . [C]hild," to which CYFD answered simply, "yes."

**{5}** Following CYFD's foundational statements, the court accepted Father's stipulation to neglect and made "a finding of neglect, pursuant to [Section 32A-4-2](E)(2)." Based on Father's stipulation and CYFD's statement, the court postponed the dispositional hearing, stating: "Let's try to set it out thirty days and, hopefully, we will have a better idea as to [Father's] position and what can be offered or what can be done."

**{6}** On November 21, 2013, CYFD informally notified Father that it intended to pursue termination of his parental rights at the next hearing scheduled for December 9, rather than conduct a dispositional hearing. In response, on November 25, 2013, Father filed a motion to vacate the TPR hearing. The motion was denied. The notice of hearing issued on December 4, 2013, listed the nature of the December 9, 2013, hearing as "[d]ispositional [and] TPR." Thirty-five days after the adjudicatory hearing, the court held a hearing, during which it characterized the previous adjudicatory hearing as a "little meeting."

**{7}** At the beginning of the December 9 hearing, which occurred after the Rule 10-344(C) NMRA thirty-day deadline for conducting dispositional hearings, Father's counsel made the argument that, under the statutory scheme, Father possessed the "opportunity to have a dispositional order entered and be permitted to work a treatment plan" and that the TPR hearing therefore should have been vacated. Counsel also pointed out that Father's November 4 stipulation to neglect was made "in part because he believed he would be able to work a disposition plan" and that the statutory scheme of Section 32A-4-22(C) "provides the court shall order [CYFD] to implement a treatment plan whenever there has been a finding of neglect or abuse." In response to CYFD's allegations of abandonment, counsel asserted that Father attempted to participate in the placement of Child and that Father did not abandon Child. These arguments were unavailing. After hearing arguments from the parties, the court ruled that it would proceed with a TPR hearing "based only on abandonment." The court acknowledged the previous finding and adjudication of neglect.

> The court [will] not use any findings made at previous hearings regarding any kinds of findings. . . . I know there was an entry of a stipulation based on some . . . representations that . . . there would be a treatment plan he would be entitled to work. The court will not consider that adjudication.

**{8}** CYFD then proceeded to establish the basis for termination of Father's parental rights based solely on an abandonment theory. Because CYFD intended to proceed only on the theory of abandonment, the court determined it would be appropriate to proceed. Relying on *Christopher B.*, 2014-NMCA-016, ¶ 12, the court believed it was appropriate to allow CYFD to "move forward without even a finding of neglect or abuse prior to proceeding on the theory of terminating someone's parental rights based on a theory of abandonment." The court emphasized that it was not considering a termination based on failure to follow a treatment plan because a treatment plan had not been adopted in the case, further stating that CYFD has a right, when claiming abandonment, to proceed on that theory at any time.

**{9}** After hearing testimony in the case, the court found that CYFD had proven, by clear and convincing evidence, Father abandoned Child. The court stated that "abandonment is a separate analysis in this case," and "it is not necessary that [CYFD] develop a treatment plan when the allegation of abandonment is being made and pursued and proven." In its findings of fact and conclusions of law, the court acknowledged that "[a d]ispositional [h]earing was not held" in the case, and it had allowed CYFD "to proceed only on the allegations of [a]bandonment." The court concluded that "[c]lear and convincing evidence exists that Father abandoned Child pursuant to Section 32A-4-28(B)(1) of the Children's Code." In its judgment, the court also added presumptive abandonment under Section 32A-4-28(B)(3) as grounds for termination. The court accordingly terminated Father's parental rights on February 10, 2014. Father filed a timely appeal.

## II.    DISCUSSION

4

**{10}** "This Court reviews issues of statutory interpretation de novo." *In re Grace H.*, 2014-NMSC-034, ¶ 34. The parties dispute whether the court properly complied with the Abuse and Neglect Act, NMSA 1978, §§ 32A-4-1 to -34 (1993, as amended through 2014), whether the correct subsection of Section 32A-4-28 was applied in this case, and whether the court violated Father's due process rights.

## A.      Overview of New Mexico Abuse and Neglect Proceedings

**{11}** The procedures required by the Abuse and Neglect Act are of paramount importance in this case. Accordingly, we begin with an overview of the relevant steps the Children's Code sets out in an abuse and neglect proceeding. *See In re Esther V.*, 2011-NMSC-005, ¶ 25, 149 N.M. 315, 248 P.3d 863 (providing an "[o]verview of New Mexico [a]buse and [n]eglect [p]roceedings" (emphasis omitted)). An abuse and neglect proceeding begins when CYFD files a petition with the court alleging abuse or neglect. § 32A-4-15. The court may then issue an ex parte custody order based on probable cause awarding CYFD custody of the child until a custody hearing is held. § 32A-4-16(A); § 32A-4-18(A). The court then holds a custody hearing and, if during that custody hearing, it finds probable cause to believe the child has been abused or neglected, the court determines custody of the child pending an adjudicatory hearing on the merits of the petition. *In re Esther V.*, 2011-NMSC-005, ¶ 27; § 32A-4-18(A), (D). These steps were met in this case.

**{12}** An adjudicatory hearing must commence within sixty days of "service on the respondent." § 32A-4-19(A); Rule 10-343(A) NMRA (listing events from which the sixty-day time limit runs). During an adjudicatory hearing, the court determines whether the allegations made in the petition are true. *In re Esther V.*, 2011-NMSC-005, ¶ 28. Parents are entitled to due process protections during the adjudicatory hearing in an abuse or neglect case. *State ex rel. Children, Youth & Families Dep't v. Kathleen D.C.*, 2007-NMSC-018, ¶ 12, 141 N.M. 535, 157 P.3d 714. These protections include timely notice, reasonable opportunity to respond to the charges, reasonable opportunity to confront adverse witnesses and present evidence, representation by counsel when such is required by statute, and opportunity to be heard by an impartial decisionmaker. *Id.*

**{13}** During the adjudicatory hearing, the court may make a determination of abuse or neglect on the basis of a valid admission. § 32A-4-20(H). When it does so, the court "shall enter an order finding that the child is neglected or abused." Section 32A-4-20(H); Rule 10-342(A)(2) NMRA (stating a valid admission may be made by entering a plea of no contest to the allegations in the petition). *But see* Rule 10-342(D) ("The court shall not enter judgment upon an admission, including the entry of a no contest plea . . . without making such inquiry as shall satisfy the court that there is a factual basis for the admission . . . [and] shall obtain support for a finding that one or more of the statutory grounds alleged in the petition are true."). In this case, an adjudication of neglect was made on November 4 and acknowledged by the court. Following a finding of neglect or abuse during the adjudicatory hearing, the court may make an immediate disposition of the case. Rule 10-344(C). If the court does not make a disposition of the case immediately, a dispositional hearing must

5

"commence within thirty . . . days after conclusion of the adjudicatory hearing." *Id.* During the dispositional stage, the court issues "factual findings relevant to a custody determination, determines custody of the child, and establishes a treatment plan." *In re Esther V.*, 2011-NMSC-005, ¶ 29; *see* § 32A-4-22. Judicial review hearings are held later to monitor parents' progress and compliance with the treatment plan. Section 32A-4-25. Permanency hearings are later held to determine the appropriate permanent placement of the child. Section 32A-4-25.1.

**{14}** At any point during an abuse or neglect proceeding, CYFD may file a motion to terminate parental rights. Section 32A-4-29(A). When this motion is filed, CYFD must request a hearing on the motion, and the hearing must commence at least thirty, and no more than sixty, days after service. Section 32A-4-29(D). Termination of parental rights may be based on abandonment, abuse or neglect, or presumptive abandonment. Section 32A-4-28(B), (C). Section 32A-4-28(B)(1) requires a court to terminate parental rights to a child when "there has been an abandonment of the child by his parents[.]" Similarly, Subsection (B)(3) provides for presumptive abandonment where certain criteria are met.

> (3) [T]he child has been placed in the care of others, including care by other relatives, either by a court order or otherwise and the following conditions exist:
> (a) the child has lived in the home of others for an extended period of time;
> (b) the parent-child relationship has disintegrated;
> (c) a psychological parent-child relationship has developed between the substitute family and the child;
> (d) if the court deems the child of sufficient capacity to express a preference, the child no longer prefers to live with the natural parent;
> (e) the substitute family desires to adopt the child; and
> (f) a presumption of abandonment created by the conditions described in Subparagraphs (a) through (e) of this paragraph has not been rebutted.

Section 32A-4-28(B)(3). Abandonment cannot be supported "by simply a finding that a parent was incarcerated during the period of alleged abandonment[.]" *Christopher B.*, 2014-NMCA-016, ¶ 12.

**{15}** Subsection (B)(2) governs what happens following a finding of abuse and neglect. It establishes a statutory prerequisite that CYFD put forth reasonable efforts to assist the parent and that requirement must be satisfied before parental rights can be lawfully terminated. *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 21, 132 N.M. 299, 47 P.3d 859. Subsection (B)(2) requires termination where

> the child has been a neglected or abused child as defined in the Abuse and

Neglect Act and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

Section 32A-4-2(E)(2) defines "neglected child" as a child "who is without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent, . . . or refusal of the parent, . . . when able to do so, to provide them[.]" A court seeking to terminate parental rights based on abuse or neglect must find that (1) "the child was abused or neglected," (2) "causes of the abuse or neglect were unlikely to change in the foreseeable future," and (3) "CYFD made reasonable efforts to assist the parent in adjusting the conditions." *State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 30, 141 N.M. 692, 160 P.3d 601 (alterations, internal quotation marks, and citation omitted).

**B.      The Court Was Required to Hold a Dispositional Hearing After Entering a Finding That Father Neglected Child**

**1.      The Court Did Not Comply With the Abuse and Neglect Act's Procedures**

**{16}** CYFD asserts that the court did not err by failing to issue a treatment plan and reasons that, under our case law, a court is not required to create a treatment plan when CYFD pursues TPR pursuant to Subsections (B)(1) and (B)(3). While this might be so if the court was proceeding solely under Subsections (B)(1) and (B)(3) as applied to the present case, this argument misses the mark. After a court makes a finding of neglect in an adjudicatory proceeding as occurred here, CYFD has a statutory duty to make reasonable efforts to assist a parent with reunification. Further, after having adjudicated neglect as occurred here, a court may not choose to ignore that ruling.

**{17}** Where there is a finding of neglect or abuse under Subsection (B)(2), the plain language of the statute requires a dispositional hearing and the creation of a treatment plan therein. The court issued a finding of neglect based on Father's no contest plea to having neglected Child. As a result, the court was statutorily required to hold a dispostional hearing to approve a treatment plan within thirty days of the adjudicatory hearing. Section 32A-4-22(C). It did not. Instead, the court held a TPR hearing thirty-five days after the court adjudicated Father to have neglected Child at the adjudicatory hearing on November 4. The court grounded its refusal to hold a dispositional hearing in December on its interpretation of *Christopher B.* We shall address whether *Christopher B.* applies in this case.

**{18}** In *Christopher B.*, this Court affirmed a court's decision allowing CYFD to proceed with a TPR solely on an abandonment theory. 2014-NMCA-016, ¶ 12. There, the allegations of abuse or neglect in the case had already been dismissed for insufficient pleading. *Id.* ¶ 11. The facts of *Christopher B.* are dissimilar to the facts here. However,

7

this Court did discuss Section 32A-4-28 and draw important distinctions between abandonment under Subsection (B)(1) and abuse or neglect under Subsection (B)(2). For example, we recognized that abuse or neglect and abandonment are "separate and independent grounds for the termination of parental rights" and that "[a]bandonment is a stand-alone basis for termination of parental rights." *Christopher B.*, 2014-NMCA-016, ¶¶ 9, 12. We concluded that, because abuse or neglect was a non-issue in that case by virtue of the dismissal, the father's due process rights had not been violated when CYFD proceeded on an abandonment theory. *Id.* ¶¶ 11-12. We nevertheless reiterated the holding made in *Benjamin O.* that "where the . . . court adjudicates a child as having been abused or neglected by a parent, CYFD is statutorily required to create a treatment plan." *Christopher B.*, 2014-NMCA-016, ¶ 9.

**{19}** The court below relied on the language regarding abandonment in *Christopher B.* without considering the context in which that decision was made when it allowed the TPR hearing to proceed solely on the theory of abandonment. *Christopher B.* specifically acknowledges the statutory requirement for a treatment plan when the court makes a finding of neglect, as it did in this case. *Id.* Therefore, while CYFD carries no duty to assist parents with reunification when it proceeds to termination of parental rights under an abandonment theory alone, an adjudication of neglect under Section 32A-4-22(C) triggers CYFD's statutory obligation to create and work a treatment plan and to follow Section 32A-4-28(B)(2). Here, the adjudication of neglect was sufficient to trigger CYFD's obligation to create a treatment plan and the court's obligation to hold a dispositional hearing. The court never acted to assess the propriety of a treatment plan, nor did it order that one be created. The adjudication was never withdrawn, just ignored when the court stated: "I know there was an entry of a stipulation based on . . . some representations that . . . there would be a treatment plan he would be entitled to work. The court will not consider that adjudication." This statement was insufficient to vacate the adjudications of neglect. It also does not serve as a dismissal of the neglect petition as was done in *Christopher B.* The district court therefore erred by failing to fulfill its statutory duties under the adjudication of neglect that it had previously entered as it was required to do by statute.

**2. The Court Did Not Use the Appropriate Subsection of 32A-4-28 When It Terminated Father's Parental Rights**

**{20}** CYFD argues that Father did not show a legitimate desire to take responsibility for Child prior to the TPR as required by *In re Grace H.*, that he was therefore not entitled to a TPR analysis under Subsection (B)(2), and that the court properly terminated Father's rights pursuant to Subsection (B)(1). The argument misstates the statutory interpretation of Section 32A-4-28 made in *In re Grace H.*

**{21}** In *In re Grace H.*, the Supreme Court addressed the ambiguity regarding when to terminate parental rights on a theory of abandonment under Subsection (B)(1) versus neglect by abandonment under Subsection (B)(2). *In re Grace H.*, 2014-NMSC-034, ¶¶ 35, 39. During its attempts to terminate parental rights in that case, CYFD failed to identify whether

8

it sought termination for abandonment under Subsection (B)(1) or neglect by abandonment under Subsection (B)(2). *In re Grace H.*, 2014-NMSC-034, ¶ 21. According to the Supreme Court, the entire process was conducted as an abuse and neglect proceeding such that the termination of parental rights should have been conducted pursuant to Subsection (B)(2), but the court ultimately terminated the father's parental rights based on Subsection (B)(1) abandonment. *In re Grace H.*, 2014-NMSC-034, ¶ 40. Because CYFD had treated the matter "throughout the life of the case," the Supreme Court determined that Subsection (B)(2) was the subsection that the court should have used in considering the TPR. *In re Grace H.*, 2014-NMSC-034, ¶ 66 (internal quotation marks omitted). The Supreme Court held that Subsection (B)(1) should be used to terminate parental rights "where a parent is completely absent prior to termination," while Subsection (B)(2) should be used "where a parent is present and expresses a legitimate desire to take responsibility for a child prior to termination." *In re Grace H.*, 2014-NMSC-034, ¶¶ 43, 49. This holding stemmed from the Supreme Court's interpretation of legislative intent in which it concluded that "the Legislature intended Subsection (B)(1) to be used when there is no parent present with whom [CYFD] could work toward[] reunification prior to termination." *In re Grace H.*, 2014-NMSC-034, ¶ 41.

**{22}** The present case lends more support to Father's position than CYFD's position. In *In re Grace H.*, CYFD did not identify which subsection of Section 32A-4-28 it sought to use in terminating parental rights. *In re Grace H.*, 2014-NMSC-034, ¶ 21 (stating that CYFD proceeded with TPR pursuant to Section 32A-4-28). In this case, CYFD specifically stated its intention to use both Subsections (B)(1) and (B)(2) in Father's TPR. Thus, CYFD demonstrated, during the November hearing, a clear intent to pursue Father's TPR, at least to some extent, according to Subsection (B)(2). That intent, coupled with the finding of neglect and the discussion during the adjudicatory hearing regarding the development of a treatment plan, indicates that the parties were proceeding under Subsection (B)(2) until the court later decided to proceed with the TPR hearing before a treatment plan was issued.

**{23}** CYFD argues that, because Father had no contact with Child and made little effort to get in contact with Child, Father had no "legitimate desire" to take responsibility for Child. We disagree. CYFD interprets the phrase "legitimate desire" used in *In re Grace H.* too literally. 2014-NMSC-034, ¶ 43 ("Subsection (B)(2) is to be used where a parent is present and expresses a legitimate desire to take responsibility for a child prior to termination."). When read together with the case's legislative interpretation of Subsections (B)(1) and (B)(2), *In re Grace H.*'s "legitimate desire" language references a parent who "is present and willing to participate," even if they do so late in the game, so long as they do so prior to termination. 2014-NMSC-034, ¶ 41. Despite the approximate seven-month delay between CYFD having taken custody of Child and Father's October 2013 motion in which Father indicated his desire to reunify with Child and his willingness to work a treatment plan, CYFD stipulated to Father's November 4 no contest plea to the neglect allegation. By failing to proceed under its adjudication of abuse and neglect, the court deprived both Father and itself of any chance to assess the "legitimacy" of Father's case. Rather than support CYFD's argument that termination under Subsection (B)(1) was appropriate in this case, *In*

9

*re Grace H.*—the Supreme Court's statutory interpretation in particular—precludes Subsection (B)(1)'s applicability to this case. As discussed earlier in this Opinion, the record reflects the parties' and the court's intention to proceed in a manner consistent with a neglect adjudication. Under *In re Grace H.*, application of Subsection (B)(1) was therefore inappropriate under the circumstances of this case.

**{24}** CYFD argues further that Father's rights were properly terminated pursuant to a theory of "presumptive abandonment." *See* § 32A-4-28(B)(3); § 32A4-28(C) (stating that a rebuttable presumption of abandonment exists when the court finds that each rebuttable presumption of abandonment exists when the court finds that each of the six factors enumerated in Section 32A-4-28(B)(3) have been met). CYFD argues that presumptive abandonment is a stand-alone basis for termintion pursuant to which the children's court may terminate parental rights without the prerequisite opportunity for the parent to comply with a court-ordered treatment plan.

**{25}** Although the court cited Section 32A-4-28(B)(3) in its final judgment as one ground for its decision to terminate Father's parental rights, the court's findings of fact did not address the requisite elements of presumptive abandonment. *See* § 32A-4-28(B)(3) (enumerating the elements of presumptive abandonment). Additionally, CYFD has failed to demonstrate whether, during the hearing on its motion to terminate Father's parental rights, it presented any evidence pertaining to the elements of presumptive abandonment that might support the court's conclusion in that regard. Under these circumstances, we reject the court's factually unsupported conclusion and CYFD's unsupported assertion that presumptive abandonment was an appropriate basis upon which to terminate Father's parental rights.

## III.    CONCLUSION

**{26}** The court terminated Father's parental rights under abandonment after making a finding of neglect. Once as the court entered a finding of neglect, it was statutorily required to conduct a dispositional hearing and implement a treatment plan. Instead, the court allowed CYFD to pursue termination of Father's parental rights solely on an abandonment theory, ignoring its previous finding, which remained unaltered for subsequent proceeding. The court erred in terminating Father's rights without having fulfilled its statutorily required duties following an adjudication of neglect. We therefore reverse the court's order terminating Father's parental rights and remand the case to the court for a dispositional hearing in accordance with the Abuse and Neglect Act.

**{27}    IT IS SO ORDERED.**

---

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

10

_____
**JONATHAN B. SUTIN, Judge**


_____
**TIMOTHY L. GARCIA, Judge**